Ryan Contracting Corporation v. Commissioner.
Ryan Contracting Corp. v. Commissioner
Docket No. 54335.
United States Tax Court
T.C. Memo 1956-188; 1956 Tax Ct. Memo LEXIS 103; 15 T.C.M. (CCH) 999; T.C.M. (RIA) 56188; August 17, 1956
*103 Held, advances by petitioner's sole stockholders and their daughter denominated as loans were in fact investments of risk capital and petitioner was therefore not entitled to deduct $8,400 paid to them in 1948 as an interest expense allowable under section 23(b) of the 1939 Code. Edward E. Burke, Esq., 921 Bergen Avenue, Jersey City, N.J., for the petitioner. Joseph F. Rogers, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1948 in the amount of $2,759.05. The sole issue is whether $8,400, which petitioner paid in 1948 and deducted as an interest expense on its return for that year was, in fact, deductible interest within the meaning of section 23(b) [1] of the 1939 Code. Concessions *104 were made with respect to all other issues, which will be taken into account in a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner was incorporated under the laws of the State of New York in 1933. It filed its income tax return for the year 1948 with the former collector of internal revenue for the third district of New York. From the time of its incorporation and throughout the year in issue, petitioner had outstanding only 61 shares of its capital stock; 51 of such shares were issued at the time of its incorporation to C. W. Ryan in consideration of a used Buick automobile, *105 $100 in cash, and the assignment to petitioner of a construction contract which Ryan had procured personally; the remaining 10 shares of stock were issued to Ryan's wife in payment of $200. Ryan was petitioner's president and his wife its secretary-treasurer. From the time of its incorporation throughout the year in issue, petitioner was engaged in the building construction business. Its volume of business continually increased over the years of its existence. Commencing in 1935, Ryan's wife began advancing sums of money to petitioner, which were recorded on its books as loans payable to her. Set forth below are the advances made by her each year, the one repayment of a part of such advances, and the outstanding balance owed to her at the end of each year: Advances
Repayments
Outstanding
Made Dur-
Made Dur-
Balance at
Year
ing Year
ing Year
End of Year
1935
$ 2,400.00
$ 2,400.00
1936
14,850.00
17,250.00
1937
$7,250.00
10,000.00
1938
8,000.00
18,000.00
1939
5,500.00
23,500.00
1940
17,500.00
41,000.00
1941
5,000.00
46,000.00
1942
24,500.00
70,500.00
1943
12,500.00
83,000.00
1944
15,000.00
98,000.00
1945
2,000.00
100,000.00
*106 On January 1, 1945, all previous notes payable to her were canceled and a new demand note in the amount of $100,000 with interest payable at the rate of 6 per cent per annum was issued to her. Beginning in 1945, C. W. Ryan and the Ryans' daughter, Brenda Marie, made advances to the corporation, which were recorded on its books as loans payable to them. The corporation, in consideration for each advance, issued demand notes with interest at 6 per cent per annum. Set forth below are the amounts of the advances made by C. W. Ryan and Brenda Marie, and the outstanding balance owed to them at the end of each of the indicated years: C. W. Ryan
Advances
Outstanding
Made
Balance at
Year
During Year
End of Year
1946
$4,000.00
$ 4,000.00
1947
2,000.00
6,000.00
1948
8,000.00
14,000.00
Brenda Marie
1945
$6,000.00
$ 6,000.00
1946
6,000.00
12,000.00
1947
7,000.00
19,000.00
1948
7,000.00
26,000.00 The money which Brenda Marie advanced to petitioner was given to her by her parents at Christmastime. At no time since 1937 and throughout the year in issue did either Ryan, his wife, or daughter make any demand on the corporation for the repayment *107 of the advances made by them. The petitioner gave no collateral to secure the repayment of any of the advances. It would have been impossible for petitioner to have operated in the manner it did without the sums which the Ryans advanced to it. Petitioner operated by taking advantage of all possible trade discounts for prompt payment of merchandise which it purchased. It was from this practice that a substantial part of its net profits were realized. During 1948, petitioner paid $8,400 to the Ryans as interest on the amounts advanced by them. On its corporate income tax return for such year, it deducted such sum as an interest expense. In determining the deficiencies herein, the respondent disallowed the deductions so claimed as not constituting an allowable deduction under section 23 of the 1939 Code. The payments made by petitioner to the Ryans in 1948 in the amount of $8,400 were essentially equivalent to dividends. Opinion RICE, Judge: Whether the $8,400 payment made by petitioner to the Ryans in 1948 was a deductible interest expense as it claimed or was essentially a taxable dividend as respondent determined is a question of fact which must be decided from all the relevant *108 circumstances. The Colony, Inc., 26 T.C. , filed April 9, 1956; , on appeal C.A. 9, November 17, 1955; , affd. Fed. (2d) , (C.A. 6, August 1, 1956); (C.A. 2, 1952), affirming . In the instant case, petitioner corporation and the Ryans, who controlled it, consistently observed the formal indicia of indebtedness in handling the advances made by them to the corporation. Demand notes payable with a fixed interest rate were issued and petitioner recorded the advances as notes payable on its books. But the form of the transactions does not fix them to be, in fact, what they purport, when an examination of all of the surrounding circumstances indicates that something else was the real intent of the parties, as here we believe it was. We think that the significant aspects of the Ryans' advances are the complete identity of interest among the Ryan family and their control of the petitioner; that there was no intention evident on their part *109 to ever demand any repayment of the amounts advanced; and the fact, as Ryan freely admitted, that it would have been impossible for petitioner to have operated to the extent that it did without the funds in question. We are satisfied that the sums advanced by the Ryans were advanced by them as risk capital in the petitioner's business. What we said in , seems particularly appropriate here: "The most significant aspect of the instant case, in our view, is the complete identity of interest between and among the three noteholders, coupled with their control of the corporation. The noteholders were husband, wife, and infant daughter, respectively. The husband held the majority stock in the corporation. It is, in our opinion, unreasonable to ascribe to the husband petitioner, F. E. Gooding, an intention at the time of the issuance of the notes ever to enforce payment of his notes, especially if to do so would either impair the credit rating of the corporation, * * * cause it to borrow from other sources the funds necessary to meet the payments, or bring about its dissolution. Compare, on this aspect of the case, the reasoning in Mullin *110 Building Corporation, supra, at pp. 355, 356. In addition, a realistic appraisal of the family situation can lead, in our view, only to the conclusion that with regard to the disposition or enforcement of their notes petitioner's wife and daughter never contemplated acting either independently of or contrary to the wishes of the petitioner. * * *" The petitioner argued on brief that it was not a thinly capitalized corporation because at the beginning of 1948 it had a surplus of $68,950.59 and at the end of the year it had a surplus of $58,762.32 which was not paid out in dividends and that such sum was left for use in the business; that its initial capital was greater than the $610 shown on its books because the contract assigned to it by Ryan had a fair market value of $14,000; and that the good will inherent in Ryan's name and his presidency of the corporation also had value. It argues that it has never paid a dividend and that its surplus has remained for use in its business throughout its existence. We have no evidence on which to make a finding as to the fair market value of the contract at the time it was assigned by Ryan to the corporation or on which to establish a value *111 for good will. Moreover, we do not decide whether petitioner was, in fact, a thinly capitalized corporation because whether it was or not is only one of the many facts to be considered in determining whether advances by stockholders to their corporation are, in fact, bona fide loans or advances of risk capital. It is to be remembered, however, that petitioner began business with only $610 of liquid assets and that the major part of its working capital throughout its existence was obtained from Ryan's wife. Although its accumulated surplus on December 31, 1948, was approximately $60,000, the amounts contributed by the Ryan family on that date totaled $140,000. From all of the evidence before us, we conclude that the respondent did not err in disallowing the deduction of the $8,400 paid by petitioner to the Ryans in 1948, as an interest expense. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.↩